

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

Superseded by H.R. 13549
85th Congress, Second
Session.  See WW-524

WILL WILSON
ATTORNEY GENERAL

February 7, 1957.

Hon. John H. Winters
Executive Director,
State Department of Public Welfare
Austin, Texas.

Opinion No. WW-18

Re: Status of guardianships
established to receive
funds from governmental
sources in view of cer-
tain provisions of the
Texas Probate Code, the
Federal Regulations gov-
erning assistance programs,
and Article III, Section
51a, of the Texas Consti-
tution, and related
questions.

Dear Sir:

You have presented for our consideration questions
concerning the nature and effect of certain guardianship proceed-
ings set up on the basis of a necessity to appoint a guardian to
receive funds from a governmental source or agency.  Your ques-
tions are as follows:

1. Whether under the present Texas Probate Code,
the Federal rules of assistance disbursement, and the Texas Con-
stitution, your department is authorized to continue assistance
payments to guardians appointed on the grounds that it is necess-
ary that a guardian be appointed to receive such payments.

2. Whether, if in our opinion such a guardianship
is a limited guardianship, there is any way under the present
law that a general guardianship may be established for the re-
cipients of public assistance without a court order declaring
such recipients incompetent or insane.

3. In the event we are of the opinion that Section
228 of the Texas Probate Code is in conflict with the rules and
regulations of the Department of Health, Education and Welfare,

you ask to be advised how you may remedy the situation not only as to the cases arising in the future, but also as to those guardianships which have been established for receiving such funds since the establishment of the new Code on January 1,1956.

Prior to the date of the Probate Code, the laws of Texas provided for a guardianship without the necessity of a formal finding of minority, incompetency, or habitual drunkenness where it was necessary to receive funds due from a governmental source. Under these provisions of the law prior to the enactment of the Probate Code, Attorney General Opinions Nos. 0-4949 and 0-6549 held that the guardianship was a general guardianship and extended to the whole of the ward's estate.

The authority for creating guardianships of this type has been carried forward in Section 4 of the Probate Code, which provides that the County Court "... may also appoint guardians for other persons where it is necessary that a guardian be appointed to receive funds from any governmental source or agency." As far as Section 4 is concerned, the guardianship is still general, but the Probate Code includes a new provision, Section 228, which places a new limitation on this type guardianship. This section is as follows:

"S 228. Powers and Duties of a Guardian of a Person to Receive Funds from a Governmental Agency.--

"A guardian appointed to receive funds from a governmental agency shall have only the power to receive and receipt for such funds, hold same, pay costs of the guardian in connection with collecting such funds or money, accounting for same to the court, and pay all or such portion of the remainder to the ward or, if the ward is mentally incompetent, use such portion for his support and maintenance, as the court by appropriate order or orders from time to time shall authorize. Such guardian shall not be considered as a guardian of the estate of such person unless he has been expressly appointed and qualified as such by procedure prescribed for that purpose in this code, to-wit: written application with appropriate allegations, general notice and personal citation duly served and returned, and order of the court with appropriate findings, adjudicating such person to be an habitual drunkard or a person of unsound mind." (Emphasis added)

The above quoted provision of the Probate Code strictly limits the powers of such a guardian to those necessary to receive and receipt for the governmental assistance funds. The guardian has powers over a portion of the estate only, and not over the person of the ward. Attorney General's Opinions Nos. 0-4949 and 0-6549 were issued prior to the enactment of this limitation. We conclude that such guardianships created after January 1, 1956, under this provision of Section 4 are not general guardianships. See also: McKinney v. Texas Bank and Trust Co., 295 S.W. 2d, 935. (Tex. Civ.App. 1956, no application for writ of error).

You have asked for our opinion as to whether this type guardianship will qualify for payment under Item 5233.22 1 c of Part IV of the Federal "Handbook of Public Assistance Administration", which reads as follows:

> "... participation is also available for payments made to the legal guardian of an eligible individual, provided that:

> "c. The scope of the authority and responsibility of the guardians of public assistance recipients is the same as that of guardians appointed for other persons, e.g., the guardian's responsibility extends to the entire estate (income and resources) of his ward and is not limited to the management of the ward's public assistance payments."

A guardianship under Section 228 is directly in the teeth of this regulation, in that: (1) the authority and responsibility of the guardian by the express limitation of Section 228 is not the same as that of other guardians, and (2) the guardian's responsibility does not extend to the entire estate because the guardian's power is strictly limited by Section 228 to the management of the ward's public assistance payments. Therefore it is our opinion that guardianships created on this basis after January 1, 1956 cannot qualify to receive Federal Assistance payments under the quoted provisions of the governing Federal regulations.

Section 51a of Article III of the Texas Constitution provides for the payment of assistance to certain individuals and includes the further provision "... that the amount of such assistance out of State funds to each person assisted shall never exceed the amount so expended out of Federal funds. ..." It is our opinion that this limitation on the amounts which may be paid by the state applies generally to all the named assistance programs.

Therefore, unless the Federal government makes assistance payments to a ward, the state would not be authorized to make payments to that ward.

In answer to your first question, if the Federal government follows our construction of its regulations and our statutes, it will not make payments to guardianships of this type. Then the state would not be authorized to make assistance payments to the ward because of the restrictions of Section 51a, Article III of the State Constitution. However, so long as the Federal government continues to make payments to such guardianships, there would be no inhibition against the state matching such payments.

Section 114 of the Probate Code also governs the answer to your second question, and provides that, "Before appointing a guardian the court must find: (a) That the person for whom a guardian is to be appointed is either a minor, a person of unsound mind, an habitual drunkard, or a person for whom it is necessary to have a guardian appointed to receive funds due such persons from any governmental source." We have held the latter type guardianship limited; therefore, unless the ward is a minor, there is no method by which a general guardianship may be created except through a finding that the ward is either a person of unsound mind or an habitual drunkard. Your second question is answered in the negative.

In answer to your third question, the best way to remedy the situation, both as to guardianships already created and guardianships to be created in the future, would be for the Legislature to repeal or modify Section 228 of the Probate Code so as to make such guardianships general and not special. In the event the Legislature does not change the law, it will be necessary, in order for existing guardianships to receive assistance payments in the future, that all such guardianships be revised and reformed, with a proper finding by the court that the ward is either a minor, or an incompetent person. The guardianship would then be general and could qualify under the applicable Federal regulations. All guardianships set up hereafter should be upon the basis of a finding of minority or incompetency by the court, and not upon the basis of a necessity to receive governmental funds. However, if the Federal government has been making payments all during the year 1956 and since the adoption of the Probate Code, then there have been no violations by your department.

## SUMMARY

A guardianship created under Section 4 of the Texas Probate Code on the basis of a necessity therefor to receive governmental assistance on behalf of the ward is not a general guardianship, and will not qualify under Part IV, Item 5233.22 1 c of the "Handbook of Public Assistance Administration", under which payments of Federal assistance are made.  Since the payment of Federal aid is thereby restricted, Art. III, Sec. 51a of the Texas Constitution will operate to limit state assistance to no more than the amount paid by the Federal government.  If the Federal government makes payments, the state is authorized to match them;  if the Federal government makes no payments, the state would not be authorized to make payments.

There is no provision under the Texas Probate Code for a general guardianship except the person be a minor, or an incompetent person.

Unless the Legislature changes the provisions of Section 228, guardianships must be based upon one of the above findings in order to qualify for Federal assistance.

Very truly yours,

WILL WILSON
Attorney General

By

John H. Minton, Jr.
Assistant

APPROVED:

OPINION COMMITTEE

H. Grady Chandler
Chairman